INDURATED CONCRETE CORPORATION *v.* ABBOTT ET AL.

[No. 188, October Term, 1949.]

*Decided June 7, 1950.*

500

The case was argued before DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Ralph W. Powers* for the appellant.

*Jesse Lee Hall* and *John F. Lillard, Jr.*, with whom were *John F. Lillard* and *J. Bowie Lillard* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Indurated Concrete Corporation, appellant, plaintiff below, from a judgment for costs rendered in favor of W. Glen Abbott and Addison T. Smith, appellees here, defendants below, in a suit in assumpsit.

The charter of appellant corporation was forfeited in February, 1933, for failure to pay the Maryland State Franchise Tax. At that time, W. Glen Abbott, one of the appellees, John Campbell, Gurney L. Hunt, and Benjamin E. Abbott were its duly elected directors. Mr. John Campbell, the president of the corporation, died January 10, 1936. Mr. Hunt, the treasurer, had died previously. Upon forfeiture of the charter these directors became the trustees for the creditors, stock-

holders and members of the corporation so dissolved. Code 1939, Article 23, Section 100. After the deaths of Messrs. Campbell and Hunt, the Abbotts became sole statutory trustees. The directors did not know that the charter had been forfeited until 1935 or 1936. From 1933 on, although the corporation was not in existence, the directors met, stockholders meetings were held, and the business carried on as if it were a corporation. On April 15, 1940, receivers were appointed for the corporation. The receivership was dissolved and the charter of the corporation was revived in November, 1945.

On May 4, 1948, the directors were: Benjamin Abbott, James Campbell, Addison T. Smith, appellee, and W. Glen Abbott, appellee, the president. At a meeting on that date all the directors were present except Benjamin Abbott. At that meeting claims of Benjamin Abbott and W. Glen Abbott, appellee, were presented against the corporation in the amount of $720 each for services rendered as statutory trustees for the six year period, at $120 per year, from February 1, 1933, when the charter was forfeited until the receivers were appointed in 1940. At the same meeting Addison T. Smith presented a claim against the corporation in the amount of $2,160 for services rendered to the corporation from May 1, 1942, to May 1, 1948, at the rate of $30 per month. At this director's meeting on May 4, 1948, by a majority of one, W. Glen Abbott and Addison T. Smith voting to approve the claims, these were allowed. Mr. Campbell voted against payment. W. Glen Abbott received $400 from the corporation on his claim in two payments of $200 each, one made May 6, 1948 and the other January 10, 1949. Benjamin Abbott received $200 on his claim on May 6, 1948. Addison T. Smith received $1,000 on his claim in two payments of $500 each, one on May 6, 1948, and the other on January 10, 1949. A payment of $500 was made by the corporation on December 7, 1945, to Leroy Pumphrey, Esq., for legal services rendered in having the charter of the corporation restored. A payment of $250 was made by the

corporation on March 3, 1948, for legal services to attorneys Baxter and Dingle.

After the election of a new board of directors, in June 1949, a suit was filed by the appellant against the appellees on the common counts and a special count for the recovery from the appellees of the following amounts paid by the appellees as officers and directors of the plaintiff corporation: To Leroy Pumphrey, $500; to Baxter and Dingle, $250; to W. Glen Abbott, $400; to Benjamin E. Abbott, $200; to Addison T. Smith, $1,000. After trial, the trial judge, sitting as a jury, on January 4, 1950, entered a judgment in favor of the appellees for costs and from that judgment the appellant appeals. In the Court of Appeals, at the argument of the case, the appellant abandoned its claim for the $250 paid Baxter and Dingle and that item will not be again discussed here.

The appellant claims that without any authorization of the Board of Stockholders the payment of $500 was made to Leroy Pumphrey, Esq. for services rendered in the receivership case for the Abbotts, from June, 1943, to December 7, 1945, to have the receivers discharged and the assets returned to the corporation; that during the time of Mr. Pumphrey's services the corporation was not in existence as the receivership was still in effect; that no claim for these services was made in the receivership case; and the Board of Directors never considered this payment. The appellant does not dispute the fairness of the Pumphrey charge but said it should have been paid by parties other than the corporation. The payment was made before December 17, 1945. The suit here before us was filed June 17, 1949. The cash book of the corporation showed the payment to Mr. Pumphrey. The trial judge found that this claim was barred by the statute of limitations, not having been sued on within three years. Code 1939, Article 57, Section 1. With this finding of the trial judge, we agree.

The claims of the Abbotts were for their services as statutory trustees from 1933 to 1940 under the provisions

of Code, Article 23, Section 100, *supra*. This Section provides: "Upon the dissolution of any corporation of this State in any manner otherwise than by judicial proceedings, and until other persons shall be appointed as receivers by some court of competent jurisdiction, the directors at the time of dissolution shall become and be trustees for the creditors, stockholders and members of the corporation so dissolved. They shall take title to its assets, real and personal, and shall have full power to wind up and settle its affairs, to use [sue] for and collect its assets and to pay its debts; and they shall divide among the stockholders or members, the money and other property that shall remain after the payment of the debts and necessary expenses; and the said trustees shall be jointly and severally liable to the creditors, stockholders and members of such corporation to the extent of its property and effects that shall come into their hands."

W. Glenn Abbott testified: "It was for the period from 1933 to 1940, at the time we were legal trustees for the corporation under the law of the State of Maryland, something that we could not get out of." He testified he and his brother, Benjamin Abbott, the surviving directors, handled $15,652.81, paying bills in the course of business, including income taxes and property taxes, collecting with great difficulty money from the lessee of the property, discounting notes at the bank and made trips to Baltimore on company business.

Judge Alvey, speaking for this Court in the case of *Cumberland Coal and Iron Company v. Parish*, 42 Md. 598, aptly said at pages 605 and 606: "The affairs of corporations are generally intrusted to the exclusive management and control of the board of directors; and there is an inherent obligation, implied in the acceptance of such trust, not only that they will use their best efforts to promote the interest of the shareholders, but that they will in no manner use their positions to advance their own individual interest as distinguished from that of the corporation, or acquire interests that may conflict

with the fair and proper discharge of their duty. The corporation is entitled to the supervision of all the directors, in respect to all the transactions in which it may be concerned; *and if one of the directors is allowed to place himself in the position of having his conduct and accounts made the subject of supervision and scrutiny, he, of course, cannot act, in regard to those matters, both for himself and the corporation;* and the consequence is, that the corporation is deprived of the benefit of his judgment and supervision in regard to matters in which such judgment and supervision might be most essential to its interest and protection. Not only this, the remaining directors are placed in the embarrassing and invidious position of having to pass upon, scrutinize and check the transactions and accounts of one of their own body, with whom they are associated on terms of equality in the general management of all the affairs of the corporation. The design of the rule, therefore, is to secure a faithful discharge of duty, and, at the same time, to close the door, as far as possible, against all temptation to do wrong, by subjecting the transactions between parties standing in such confidential relations, to the most exact and rigid scrutiny, whenever such transactions are brought in question before the courts. The transaction may not be *ipso facto* void, but it is not necessary to establish that there has been actual fraud or imposition practiced by the party holding the confidential or fiduciary relation;—the *onus* of proof being upon him to establish the perfect fairness, adequacy, and equity of the transaction; and that too by proof entirely independent of the instrument under which he may claim." First emphasis supplied. *Hammond v. Lyon Realty Co.,* 163 Md. 442, 467, 469, 163 A. 480; *Pritchard v. Myers,* 174 Md. 66, 77, 197 A. 620, 116 A. L. R. 775; *Williams v. Messick,* 177 Md. 605, 609, 11 A. 2d 472, 129 A. L. R. 1035.

It was further said by Judge Pearce in *Francis v. Brigham-Hopkins Company,* 108 Md. 233, at page 269, 70 A. 95, at page 104 quoting from Judge Gorter: " 'It

seems to me that even where one votes for his own salary in a board where *he is given the authority to act by the by-laws adopted by the stockholders, and his vote is essential,* the act so done should not be absolutely void, but should be subject to close scrutiny by the courts with the burden of proof upon the person benefited by the act, to show that it was just and proper, and that no advantage was taken of the stockholders'—and we concur in this view of the law."

It is admitted in this case that the Abbotts did not know the charter had been forfeited until 1935 or 1936. Consequently, during the period from 1933 to 1935 or 1936, they were doing no more than regular directors' work. It is not shown in this case that the work they did after 1935 or 1936 and until 1940 was any greater than the work they did before they were advised the charter was forfeited. Looking at these claims with the "most exact and rigid scrutiny" it does not seem that the work done by them was more than that ordinarily done by directors in a small, closely owned corporation in which it does not appear that salaries had been paid officers or directors during its existence. It was said by Judge Richard Grason in *Santa Clara Mining Association v. Meredith,* 49 Md. 389, at page 400, 33 Am. Rep. 264: "To entitle a president or director of a corporation to recover for services rendered his corporation, he must prove an *express* contract of employment, if the services for which he claims compensation are within the line and scope of his duties as president or director. To this effect are nearly all the cases cited in the briefs, and this general principle is admitted by the counsel of the appellee to be correct. But if a president or director of a corporation renders services to his corporation which are *not* within the scope of, and are not required of him by, his duties *as* president, or director, but are such as are properly to be performed by an agent, broker or attorney, he may recover compensation for such services upon an implied promise." Compare *Shriver v. Carlin & Fulton Co.,* 155 Md. 51, 59, 141 A. 434, 58 A. L. R. 767.

The services claimed to have been rendered by the Abbotts do not appear to be unusual or such as to require "an agent, broker or attorney" or any one in a similar category.

Furthermore, if these were just claims against the corporation, these were due and owing at the time of the appointment of the receivers for the corporation in 1940 and could have been filed in the receivership case. In fact, we find that in a petition filed in the receivership case by the Abbotts, the following appears: "That there is due Benj. E. Abbott and W. Glen Abbott, former officers of the Corporation for services rendered by them as Trustees from the date of the lapse of the charter, February 10, 1933, until April 15, 1940, the date of the appointment of the Receivers, *a period of seven years;* that they have never been compensated for their services; that this Court is requested to fix the amount of their compensation, not exceeding $50 per annum for each Trustee." This claim of $350 for each trustee was not paid in the receivership case although there was money in that account. W. Glen Abbott testified that the original claims filed by him and his brother in the receivership case were each for $720.

We must also note that the vote of W. Glen Abbott alone at the directors meeting on May 4, 1948, was the vote that decided whether his claim and that of his brother should be paid. We are of opinion that these claims, once each in the amount of $350, not paid in the receivership case, should not have been passed in the amounts of $720 each at the directors meeting on May 4, 1948. *Francis v. Brigham-Hopkins Company, supra,* 108 Md. 269, 70 A. 95. Without his vote the claims would not have passed. For the reasons herein given, we are of opinion that the appellees should not have paid W. Glen Abbott the sum of $400 and Benjamin E. Abbott $200.

Addison T. Smith, the uncle of the Abbotts, invested $2,000 in the corporation in 1926. He said he was first elected a director in 1944. This was during the period

that the charter had been forfeited. He was elected secretary in 1946 and became treasurer about a year later. His bill in the amount of $2,160 was for work done from May 1, 1942 to May 1, 1948. He claimed that at the request of over three-fourths of the stockholders he expended his own funds, efforts and time in having the charter restored, and requiring the receivers by Court action to pay claims against the corporation out of corporate funds held by the receivers, and in having the receivers discharged.

During part of the period covered by Smith's bill, from May 11, 1942, to November, 1945, the corporation was in receivership and Addison Smith apparently took an active part in the receivership. His claim for services during that period should have been filed in the receivership case. From the record, the receivers turned money back to the corporation. They could have paid at least part of Smith's claim, if it had been filed and approved in the receivership. For the remaining period from November, 1945, to May 1, 1948, he was a director of the corporation and part of that time secretary and treasurer. It was admitted at the argument in this Court that he had been paid his expense money in the amount of about $1,350. There was no agreement or contract with the corporation for these services rendered while he was a director. *Santa Clara Mining Association v. Meredith, supra,* 49 Md. 400, 33 Am. Rep. 264. Mr. Pumphrey was paid as his attorney. As in the case of the Abbotts, the services rendered by this director and stockholder do not appear unusual for one in that position, if we examine his claim with the "most exact and rigid scrutiny". *Cumberland Coal and Iron Company v. Parish, supra,* 42 Md. 606. Also, as in the case of the Abbotts, it was the vote of Addison T. Smith alone which constitutes the majority necessary to pass his claim at the directors meeting on May 4, 1948. *Francis v. Brigham-Hopkins Company, supra,* 108 Md. 269, 70 A. 95. Without his vote his claim would not have been approved. For the reason given, the appellees should

508

not have paid on the Addison T. Smith claim the sum of $1,000.

At the meeting on May 4, 1948, after the claims of the Abbotts and Smith had been passed, their votes constituting the necessary majority to pass the claims, Mr. James Campbell stated that he would file a claim for services heretofore rendered, and he was assured by the Secretary that his claim would have the consideration of the Board if properly substantiated. Mr. Campbell, however, did not file his claim.

An action at law to recover for an injury to a corporation can be brought only in the name of the corporation itself acting through its board of directors. *Waller v. Waller*, 187 Md. 185, 189, 49 A. 2d 449. As we are of opinion that the appellees should not have paid the aforesaid sums of $200 to Benjamin Abbott, $400 to W. Glen Abbott, and $1,000 to Addison T. Smith the judgment must be reversed.

> *Judgment reversed and judgment entered in favor of the appellant against the appellees in the amount of $1,600, with interest on $900 from May 6, 1948, and with interest on $700 from Jan. 10, 1949 until paid, with costs.*