628 A.2d 170

**MEDICAL MUTUAL LIABILITY INSURANCE SOCIETY OF MARYLAND et al.**

**v.**

**B. DIXON EVANDER AND ASSOCIATES et al.**

**No. 66, Sept. Term, 1993.**

Court of Appeals of Maryland.

July 26, 1993.

David M. Funk, Charles S. Fax and Bryan D. Bolton, Shapiro and Olander, and Douglas D. Connah, Jr., Nell B. Strachan, Venable, Baetjer and Howard, Baltimore, submitted for petitioners.

Francis B. Burch, Jr., Robert J. Mathias, and Brian L. Wallace, Piper & Marbury, Baltimore, submitted for respondents.

Submitted to MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ELDRIDGE, Judge.

The respondents, B. Dixon Evander & Associates, Inc. (Evander, Inc.), an insurance agency owned by Mr. Evander, and Mr. Evander individually, filed in the Circuit Court for Baltimore City a complaint against the petitioners, Medical Mutual Liability Insurance Society of Maryland and its chairman and chief executive officer, Raymond M. Yow, M.D.[1] Both Evander, Inc. and Mr. Evander sought damages from Medical Mutual and Dr. Yow in four counts.[2] Each count was

---

1. Richard A. Walker was also named in each count. Mr. Walker is the Assistant Vice–President of Marketing for Medical Mutual. The trial court granted the defendants' motions for judgment with respect to each count against Mr. Walker.

2. Hereinafter, for convenience the defendants-petitioners collectively sometimes will be referred to as "Medical Mutual."

on behalf of both plaintiffs against both defendants. Count I was based upon defamation; Count II was based upon tortious interference with business relationships; Count III was based upon "tortious interference with prospective advantage" and Count IV was based upon "injurious falsehood." The factual predicate for all four counts was a letter written by Dr. Yow on behalf of Medical Mutual to its policyholders brokered by Evander, Inc., informing the insureds that Medical Mutual would no longer accept new business or renewal business from Evander, Inc. Specifically, the plaintiffs asserted that a particular statement in the letter caused harm. The statement in the "Dear Colleague" letter was as follows: "I have listened to members over the past months, and it has become apparent that a few brokers are no longer representing Medical Mutual in a way that many of you feel to be adequate."

Following a six-day trial, which the Court of Special Appeals later characterized as being "dominated" by the above-quoted statement from the letter,[3] the trial court submitted the case to the jury on two counts, defamation and tortious interference with business relationships.[4] The verdict sheet asked the jury to consider, *inter alia,* the following questions:

---

**3.** *Medical Mutual v. Evander,* 92 Md.App. 551, 560, 609 A.2d 353, 357 (1992).

**4.** As to the tortious "interference with prospective advantage" and the "injurious falsehood" counts, the trial judge indicated that these were not torts separate from the torts of defamation and tortious interference with business relationships. The trial judge stated:

"I am persuaded that the injurious falsehood is not an additional cause of action in the facts of this case, and that takes care of that, and my understanding of the tortious interference torts is that there is really only one tort, and the only reason that we have more than one name for that tort is that differing contractual or relationships that exist and with respect to which the tortious interference applies.... And so it makes no sense for me to submit more than one tortious interference count to the jury."

Apparently, the trial judge combined the count of tortious interference with business relationships with the count of tortious interference with prospective advantage and submitted both to the jury. That combination, however, is not reflected in the docket entries. Moreover, the docket entries do not show any disposition with respect to the "injurious falsehood" count.

"1. Do you find for plaintiffs on their claim for defamation against Medical Mutual?

"2. Do you find for plaintiffs on their claim for defamation against Raymond M. Yow?

"3. Do you find for plaintiffs on their claim for tortious interference with business relationship against Medical Mutual?

"4. Do you find for plaintiffs on their claim for tortious interference with business relationships against Raymond M. Yow?"

The jury failed to reach a verdict on the defamation count, and a mistrial was declared. The jury found for the plaintiffs against the defendants on the count of tortious interference with business relationships, awarded $1.725 million in compensatory damages,[5] awarded $5 million in punitive damages against Medical Mutual, and awarded $2 million in punitive damages against Dr. Yow. At plaintiffs' request, the trial court in an order dated November 1, 1991, purported to make the appropriate certification and to direct the entry of a final judgment pursuant to Maryland Rule 2–602 "as to the claims set forth" in the "judgment on the verdict in favor of the plaintiffs." No further action was taken on the defamation count.

Medical Mutual noted an appeal, and the case was briefed and argued in the Court of Special Appeals. Without address-

---

**5.** Originally the verdict sheet requested that the jury award compensatory damages against Medical Mutual and Dr. Yow separately. The jury returned a verdict sheet which awarded compensatory damages in favor for the plaintiffs against Medical Mutual in the amount of $1,500,-000 and against Dr. Yow in the amount of $225,000. Upon the receipt of the verdict sheet, the trial judge and counsel realized that they had confused the jury by sending in a request for separate compensatory damage awards against Medical Mutual and Dr. Yow. The trial judge explained to the jury that "[w]ith respect to compensatory damages, they are to compensate for loss and damage. There is only one total amount which is the correct compensation amount ... [W]hat I am going to do is to give you back the verdict sheet, ... all we need to know now is just one single amount that you find to be appropriate compensatory damages in this case." Thereafter, the jury returned one compensatory award in the amount of $1,725,000.00.

ing or apparently noticing an issue concerning the finality and appealability of the "judgment," the Court of Special Appeals purported to vacate the punitive damages awards, to affirm the "judgment" in all other respects, and to remand the case to the circuit court for further proceedings. *Medical Mutual v. Evander*, 92 Md.App. 551, 609 A.2d 353 (1992). Medical Mutual thereafter filed a petition for a writ of certiorari, which was denied, 328 Md. 447, 614 A.2d 973.

After reconsideration, the trial court, refusing to reduce the amount of punitive damages awarded by the jury, reaffirmed its prior action by denying Medical Mutual's "Motion for New Trial and for Remittitur." Medical Mutual again noted an appeal to the Court of Special Appeals and, prior to any proceedings in the intermediate appellate court, filed in this Court a petition for a writ of certiorari. The petition raises issues with respect to both the compensatory and punitive damages awarded by the jury. Plaintiffs answered the petition on its merits.

■ Prior to acting on the petition, this Court ordered the parties to address, by memoranda of law, the following issue:

> "Whether the trial court's certification of the judgment as final under Rule 2–602(b) was a valid certification or whether the unresolved defamation count, and the adjudicated tortious interference with business relationship count were actually a single claim, rendering the certification improper under Rule 2–602(b)." [6]

We referred the parties to the following opinions of this Court: *Planning Board v. Mortimer*, 310 Md. 639, 649–651, 530 A.2d 1237, 1240–1243 (1987); *Washington Sub. San. Comm'n v. Frankel*, 302 Md. 301, 307–309, 487 A.2d 651, 655 (1985); *Potter v. Bethesda Fire Dept., Inc.*, 302 Md. 281, 285–287, 487

---

**6.** Prior to our order, the parties, the trial court and the Court of Special Appeals, apparently failed to notice an issue relating to the trial court's purported certification of the judgment as final under Rule 2–602. Nevertheless, this Court will consider a problem relating to the finality of a judgment *sua sponte*. *Sisk v. Friendship Packers*, 326 Md. 152, 158, 604 A.2d 69, 72 (1992), and cases there cited.

A.2d 288, 290–291 (1985); *East v. Gilchrist*, 293 Md. 453, 458–462, 445 A.2d 343, 345–346 (1982); *Biro v. Schombert*, 285 Md. 290, 293–297, 402 A.2d 71, 73–74 (1979); *Diener Enterprises v. Miller*, 266 Md. 551, 554–556, 295 A.2d 470, 473 (1972). The parties have filed memoranda addressing this question.

Medical Mutual argues that "[b]oth counts were based upon a single factual occurrence—the issuance of the allegedly defamatory letter—and both counts sought a single recovery—compensation for lost business revenues caused by the alleged defamation." Relying on the above cited Maryland cases, Medical Mutual concludes that "the unresolved defamation count and the adjudicated tortious interference with business relationship count were in fact a single claim, and thus the trial court's certification of the adjudicated count as a final judgment under Rule 2–602(b) was improper."

Although plaintiffs do not contend that the defamation and tortious interference counts were based on any facts other than the distribution of the "Dear Colleague" letter, plaintiffs argue that the counts constitute separate claims because they "sought different recoveries and were not mutually exclusive." With respect to the argument that each count sought different damages, plaintiffs refer to the jury instructions with regard to the damages for each count, stating that "Evander sought recovery in his defamation claim for out-of-pocket loss, loss of reputation, and personal humiliation and embarrassment, and that in his tortious interference claim he sought recovery for the destruction of his business." [7] Consequently, plaintiffs conclude that the certification was proper.

■ After consideration of the arguments submitted by the parties, we have granted the certiorari petition, and, for the reasons hereafter set forth, we shall dismiss the appeal.

Rule 2–602 provides as follows:

---

7. In their memorandum of law the plaintiffs use the term "Evander" collectively to embrace both the corporation and the individual plaintiff. As will be demonstrated, *infra,* precise analysis requires each party's "claims" to be separately addressed.

"**(a) Generally.**—Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:

(1) is not a final judgment;

(2) does not terminate the action as to any of the claims or any of the parties; and

(3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.

"**(b) When Allowed.**—If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:

(1) as to one or more but fewer than all of the claims or parties; or

(2) pursuant to Rule 2–501(e)(3), for some but less than all of the amount requested in a claim seeking money relief only."

It is undisputed that under this rule, a trial court can only certify as final a judgment that, "but for multi-party or multi-claim circumstances, would be final in the traditional sense." *Planning Board v. Mortimer, supra,* 310 Md. at 649, 530 A.2d at 1242. Therefore, although the trial court in the present case expressly determined that there was no just reason for delay and purported to direct the entry of a final judgment, the trial court would not be authorized to finalize an order unless, by its nature, that order was final as to a single claim or party. " 'Such a finding only makes a final order appealable. It cannot make a nonfinal order ... into a final order.' " *Planning Board v. Mortimer, supra,* 310 Md. at 654, 530 A.2d at 1245, quoting *Jursich v. Arlington Heights Fed. Sav. & Loan Ass'n,* 83 Ill.App.3d 352, 38 Ill.Dec. 656, 403 N.E.2d 1260 (1980). As stated in *Snowden v. Baltimore Gas & Electric,* 300 Md. 555, 563, 479 A.2d 1329, 1333 (1984), "the authoriza-

tion . . . for trial judges to make certain orders appealable, is limited to orders which, by their nature, have a characteristic of finality. Such orders must be completely dispositive of an entire claim or party." *See also Keene Corp. v. Levin,* 330 Md. 287, 292, 623 A.2d 662, 664 (1993); *East v. Gilchrist, supra,* 293 Md. at 458, 445 A.2d at 345; *Biro v. Schombert, supra,* 285 Md. at 294, 402 A.2d at 74.

This Court has repeatedly held that " '[a]n order which disposes of only a part of a single claim cannot be made final' " under Rule 2–602 or its predecessor rule. *East v. Gilchrist, supra,* 293 Md. at 458, 445 A.2d at 345, quoting *Biro v. Schombert, supra,* 285 Md. at 294, 402 A.2d at 74. *See also, e.g., Keene Corp. v. Levin, supra,* 330 Md. at 292–293, 623 A.2d at 664–665; *Planning Board v. Mortimer, supra,* 310 Md. at 654, 530 A.2d at 1245; *Washington Sub. San. Comm'n v. Frankel, supra,* 302 Md. at 308–309, 487 A.2d at 655; *Snowden v. Baltimore Gas & Electric, supra,* 300 Md. at 560, 479 A.2d at 1332; *Lewis v. Lewis,* 290 Md. 175, 181, 428 A.2d 454, 458 (1981); *Diener Enterprises v. Miller, supra,* 266 Md. at 554–555, 295 A.2d at 473. The parties do not challenge these holdings. Rather, the disputed issue is whether the defamation and tortious interference counts constitute one claim.

In *Diener Enterprises v. Miller, supra,* 266 Md. at 556, 295 A.2d at 473, this Court examined the requirements for separate claims for purposes of what is now Rule 2–602, stating:

"[W]here a claimant presents a number of legal theories, but will be permitted to recover on at most one of them, his possible recoveries are mutually exclusive, and he has but a single claim for relief. The existence of multiple claims ultimately depends upon whether the 'aggregate of the operative facts' presented states more than one claim which can be separately enforced."

*See also, e.g., Planning Board v. Mortimer, supra,* 310 Md. at 651, 530 A.2d at 1243; *Potter v. Bethesda Fire Dept., Inc., supra,* 302 Md. at 286, 487 A.2d at 290; *Biro v. Schombert, supra,* 285 Md. at 295, 402 A.2d at 74; *Harford Sands, Inc. v. Levitt & Sons,* 27 Md.App. 702, 708, 343 A.2d 544, 547, *cert.*

*denied,* 276 Md. 744 (1975) ("a claim for purposes of [Rule 2–602 is] a set of facts giving rise to a legal right").

When two counts are based upon the same facts, and merely represent different legal theories upon which the plaintiff can recover the same damages, the counts constitute a single claim. *See East v. Gilchrist, supra,* 293 Md. at 459, 445 A.2d at 346 ("Different legal theories for the same recovery, based on the same facts or transaction, do not create separate 'claims' for purposes of the rule"); *Biro v. Schombert, supra,* 285 Md. at 295, 402 A.2d at 74 (alternate legal theories "based upon one matter or transaction" do not give rise to separate claims); *Diener Enterprises v. Miller, supra,* 266 Md. at 556, 295 A.2d at 473 ("the 'claims' stated by using two counts is actually but one claim that was framed in two ways so as to present either one of two legal theories for one recovery"); *Harford Sands, Inc. v. Levitt & Sons, supra,* 27 Md.App. at 711, 343 A.2d at 547.

In this case, the counts of defamation and tortious interference with business relationships were based upon identical facts. As the Court of Special Appeals stated, one sentence in the letter sent to the insureds "dominated" the trial. In fact, the trial court at one point stated:

> "If the verbal conduct is not defamatory, it's not wrongful, and if its not wrongful, both counts fall, both the defamation and the tortious interference ... I mean, I've looked at this whole case from the beginning as a case of defamation, and I've looked at the multiple counts as different ways to state the cause of action for the same conduct, and indeed that has been the plaintiff's explanation of what the plaintiff was doing ... I am satisfied that there's no such thing as a separate defamation count and a wrongful interference count based upon defamatory conduct."

Also, in his closing statement, plaintiffs' counsel advised the jury that "[t]he intentional interference with contract is really based upon the defamation." As all parties concede, there are no other facts upon which the counts for defamation or tortious interference were grounded.

At trial, plaintiffs' counsel acknowledged that the damages were essentially the same in the following colloquy with the trial judge:

"THE COURT: How can the damages be different for the defamation count from the tortious interference count?

PLAINTIFFS' COUNSEL: Your honor, I agree with you that from a lawyer's perspective, I think all three of us are thinking that if there's damage ... it ought to be the same for any count....

THE COURT: I mean I really think this is a one count, this is a one count case."

Plaintiffs rely on the jury instructions to argue that the count of defamation and the count of tortious interference are separate claims. The circuit court instructed the jury as follows:

"If you find that the plaintiffs were defamed, they are entitled to recover actual damages in an amount which would be fair and just compensation for any actual injury that they have proven that they sustained. That is, out-of-pocket loss, impairment of reputation and standing in the community, personal humiliation and mental anguish and suffering, which were caused by the communications.

\* \* \* \* \* \*

"If you find that Medical Mutual and/or Dr. Yow tortiously interfered with plaintiffs' business relationships with its physician clients, you may award and you shall award as actual damages an amount that would fairly and justly compensate plaintiffs for Medical Mutual's conduct.

"Compensatory damages consist of direct economic losses and out-of-pocket expenses resulting from the loss of plaintiffs' business."

Many related torts as they developed at common law theoretically compensate a plaintiff for a different harm. For example, the tort of false imprisonment has as an element the harm of being restrained by force. Poe, *Pleading and Practice,* at 179 (Tiffany ed. 1925). Similarly the tort of battery

has as an element the harm of "the actual doing of an injury." *Id.* at 175. Nevertheless, when a count for battery and a count for false imprisonment arise out of a single act of physical restraint, there is obviously only one claim. This is true despite the fact that each tort has as an element a different theory of harm.

Furthermore, even if the requests for relief under two different theories, based on the same occurrence, are not precisely identical, this does not, under our cases, automatically result in separate claims. *See, e.g., East v. Gilchrist, supra,* 293 Md. at 460, 445 A.2d at 346 ("Declarations concerning the validity of [the statute] and the defendants' violation of the provision, mandamus and injunctive relief based upon the alleged violation, and damages caused by the alleged violation, are all multiple remedies for the violation of one legal right").

■ The notion has been advanced that if a complaint is pled in counts, the disposition of each count is certifiable under Rule 2–602. *See* Niemeyer & Schuett, *Maryland Rules Commentary,* at 454 (2d ed. 1992). This position is untenable. Lawyers traditionally put each separate theory of tort liability in a separate count. Allowing a trial judge to certify the disposition of a count without regard to whether it is a separate claim would lead to numerous piecemeal appeals. For example, in a case involving the discharge of an employee for suspected theft, there may be separate counts based upon false imprisonment, malicious prosecution, defamation, abusive discharge, and intentional infliction of emotional distress. *See, e.g., Caldor v. Bowden,* 330 Md. 632, 625 A.2d 959 (1993). Under the theory that the separate disposition of each count is a separate claim certifiable under Rule 2–602, there could be numerous piecemeal appeals in the same case. Thus, if two counts were resolved at the motion to dismiss stage, the trial court could certify the judgment, and the order would be final and appealable. Thereafter, if two other counts were resolved on a partial summary judgment, that disposition could also be certified and an appeal to the Court of Special Appeals could be taken. Finally, if the remaining counts were resolved after

trial, another appeal would be possible. This approach is clearly contrary to the policy against piecemeal appeals. It would not be consistent with efficient judicial administration.

What makes claims separate is *not* whether they are pled in separate counts or embody separate legal theories. None of our cases, in defining a "claim" for purposes of Rule 2–602 or its predecessor, have used a "count" or a "legal theory" as a test. Instead, our cases have made it clear that the disposition of an entire count or the ruling on a particular legal theory does not mean, in and of itself, that an entire "claim" has been disposed of. *See, e.g., East v. Gilchrist, supra,* 293 Md. at 459, 445 A.2d at 346 ("Different legal theories for the same recovery, based on the same facts or transaction, do not create separate 'claims' for purposes of the rule"); *Biro v. Schombert, supra,* 285 Md. at 295, 402 A.2d at 74 (alternate legal theories "based upon one matter or transaction" do not give rise to separate claims); *Diener Enterprises v. Miller, supra,* 266 Md. at 556, 295 A.2d at 473 ("the 'claims' stated by using two counts is actually but one claim that was framed in two ways so as to present either one of two legal theories for one recovery"). *See also Harford Sands, Inc. v. Levitt & Sons, supra,* 27 Md.App. at 711, 343 A.2d at 547.

■ In the matter before us Evander, Inc. asserted a theory of defamation as to it in Count I and a theory of tortious interference with its business relationships in Count II. Even though the two causes of action were different torts, they were based on the same acts. Even though the torts conceptually may be designed to vindicate somewhat different harms, the measure of damages under the instruction of the trial court as applied to Evander, Inc. was the same for both torts. If Evander, Inc.'s business reputation was injured, as the jury was free to consider under the instructions, the compensation for that injury, under the proof in this case, was measured by projected loss of corporate profit. That is the same evidence furnished for measuring the damages of Evander, Inc. under Count II. That evidence consisted of an opinion by the plaintiffs' long-time accountant who utilized as

the factual basis for the expert opinion the financial records and corporate tax returns of Evander, Inc. Further, corporations do not suffer personal humiliation and mental anguish, despite the fact that the trial court, in an effort to simplify submission to the jury, did not distinguish between the types of harms suffered by Evander, Inc. and Mr. Evander in its instruction as to damages on Count I. Thus, Evander, Inc. asserted but one claim for purposes of Rule 2–602 in Counts I and II of the complaint. There has been no judgment entered on Count I, and Evander, Inc.'s single claim could not be made appealable by certifying the judgment on Count II as a final judgment in favor of Evander, Inc.

■ The plaintiffs' principal argument, stated precisely, is that the damages that could be awarded to Mr. Evander on the defamation theory asserted in Count I of the complaint differ from the damages that were awarded on Count II of the complaint. As an individual plaintiff, Mr. Evander could be awarded damages for personal humiliation and mental anguish and suffering on Count I. *See Hearst Corporation v. Hughes,* 297 Md. 112, 466 A.2d 486 (1983). His non-economic damages, Mr. Evander asserts, distinguish his Count I "claim" from the economic damages sought under his Count II "claim." He submits that because the two counts do not produce the same recovery, they produce separate claims.

We need not decide here whether Mr. Evander asserted separate claims. That question goes to the power of the circuit court to certify under Rule 2–602. Inasmuch as the judgment in favor of Evander, Inc. could not be certified, it would have been necessary for the circuit court to determine whether there was any just reason to delay the entry of a final judgment on Count II in favor of Mr. Evander alone. The trial court never exercised a discretion limited to the judgment in favor of the individual plaintiff.

The damages awarded on Count II represent loss of corporate profits, and Mr. Evander's interest in that judgment is that of an owner of the stock in Evander, Inc. Indeed, had the circuit court recognized that it could not certify the

judgment in Count II in favor of Evander, Inc., we are confident that it would not have exercised its discretion as " 'dispatcher,' " *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 435, 76 S.Ct. 895, 899, 100 L.Ed. 1297, 1306 (1956), to send on for expedited appellate review only the judgment in favor of Mr. Evander on Count II, when the underlying right asserted in Count II was almost certainly exclusively that of Evander, Inc. *See Gay v. State Deposit Ins. Fund Corp.,* 308 Md. 707, 719, 521 A.2d 1205, 1211 (1987) (receiver for parent corporation may not assert as the parent's claim a claim of the subsidiary for injury to the subsidiary); *Indurated Concrete Corp. v. Abbott,* 195 Md. 496, 508, 74 A.2d 17, 22 (1950) ("An action at law to recover for an injury to a corporation can be brought only in the name of the corporation itself acting through its board of directors"); *Waller v. Waller,* 187 Md. 185, 189, 49 A.2d 449, 452 (1946) (action at law to recover damages for an injury to a corporation may not be brought "by an individual stockholder though the injury may incidentally result in diminishing or destroying the value of the stock"). Phrased another way, if the trial court had certified for immediate appeal only the judgment in favor of Mr. Evander on Count II, the trial court would have abused its discretion by piecemealing the appeal in that fashion. *Diener Enterprises v. Miller,* 266 Md. at 556, 295 A.2d at 473.

 Consequently, as there has never been a proper final judgment in this case, it would not be appropriate for either this Court or the Court of Special Appeals to consider the merits of the appeal. Moreover, by the very terms of Rule 2–602(a)(3), the trial court's "judgment" on the tortious interference with business relationship count remains subject to the full revisory power of the trial court until such time as a proper final judgment is entered. *See Quartertime Video v. Hanna,* 321 Md. 59, 65–66, 580 A.2d 1073, 1075–1076 (1990).[8]

---

**8.** There is no indication on the docket entries that Counts III and IV for "tortious interference with a prospective advantage" or "injurious falsehood," were ever finally disposed of by the trial court. These

*APPEAL DISMISSED. COSTS IN THIS COURT TO BE EQUALLY DIVIDED.*

---

counts also should be disposed of on the docket to avoid further questions as to whether a final judgment can be entered.

Along with the petition for a writ of certiorari, the petitioners filed a request for a stay of the enforcement of the "judgment" in this case. The respondents represented to this Court that there would be no attempt to enforce the "judgment" prior to a decision by this Court on the petition for a writ of certiorari. Because our conclusion that the "judgment" entered in this case was not final, the petitioners' request for a stay will be denied on the ground of mootness.