Richard P. **SULLIVAN**

v.

**EASCO CORPORATION, et al.**

Civ. No. S86–1113.

United States District Court,
D. Maryland.

March 23, 1987.

Shale D. Stiller, Jay I. Morstein, Andrew D. Levy, Frank, Bernstein, Conaway & Goldman, Baltimore, Md., for plaintiff.

Wilbur D. Preston, Richard J. Magid, Whiteford, Taylor & Preston, Baltimore, Md. (Skadden, Arps, Slate, Meagher & Flom, of counsel), Wilmington, Del., for defendants.

## MEMORANDUM

SMALKIN, District Judge.

Now pending in this case is the motion of plaintiff Richard P. Sullivan (Sullivan) for summary judgment with respect to Counts I and V of his complaint. Defendants Easco Corporation, et al., (Easco) have responded to Sullivan's motion within the time agreed to by the parties. Under a court-approved stipulation, Easco has submitted a supplemental response. Sullivan has replied to Easco's response and its supplement. No oral hearing is necessary to decide this matter. Local Rule 6, D. Md.

### I.

The following factual summary is pertinent to this motion:

#### Count I

Easco is a Maryland corporation engaged in the manufacture of metal products. Sullivan commenced his employment with Easco in 1963, remaining an Easco employee until June 1985. During his employment with Easco, Sullivan received numerous promotions, raises, and fringe benefits, resulting in his election as President and Chief Executive Officer of Easco in 1973. In 1984, Sullivan was promoted to the position of Chairman of the Board of Directors of Easco, while remaining Chief Executive Officer.

In January, 1985, Equity Group Holding proposed a cash merger with Easco. (Paper # 26, Exhibit A). At its January 9, 1985 meeting, Easco's Board of Directors unanimously decided that Equity Group Holding's offer was inadequate, and that merger should be resisted by all proper means. (Paper # 26, Exhibit B). It was also decided at that meeting that employment contracts should be offered to certain key executives in order to reduce the unsettling effects of Equity Group Holding's activities. (Id.) The Easco Board of Directors, with Sullivan and Easco President

Robert L. Swam (Swam) abstaining, then unanimously authorized the execution of an employment agreement between Easco and Sullivan on January 9, 1985. (*Id.*). The directors who approved the agreement were all disinterested, by Easco's admission. (Paper # 33, at 14). On January 14, 1985, Easco (by Swam) and Sullivan executed the employment agreement. (Paper # 26, Exhibit A).

The employment agreement between Easco and Sullivan contains the following pertinent provisions: Sullivan is to serve as a full-time executive employee for an employment period of five years, commencing January 14, 1985. (Paper # 26, Exhibit A at § 4.1). Easco may terminate Sullivan before the end of this five year period. (*Id.*) In the event of termination by Easco, Sullivan shall continue to be treated as an executive employed by the corporation, receiving salary as well as benefits under any employee benefit plan. (*Id.*, at § 4.3).

On June 10, 1985, Easco terminated Sullivan's employment. Sullivan demanded a lump sum severance allowance, by letter dated June 25, 1985. To date, Easco has not acceded to Sullivan's demand.

### Count V

On September 29, 1981, Easco and Sullivan executed the Easco Corporation Fifth Incentive Stock Option Agreement, Grant Number 9 (Plan 5, Grant 9), whereby Easco gave Sullivan the option to purchase 15,000 shares of Easco stock for the price of $19.50 per share. When adjusted for an October 1983 three-for-two stock split, Plan 5, Grant 9 gave Sullivan the option to purchase 22,500 shares of Easco stock for the price of $13.00 per share.

Easco and Equity Group Holding merged on June 10, 1986. As of that date, Sullivan held 9,000 unexercised stock options pursuant to Plan 5, Grant 9. The merger agreement between Easco and Equity Group Holding provided that each holder of an unexercised stock option would be granted a cash payment in cancellation of the option in a sum equal to the amount by which $20.50 (later reduced to $17.50) exceeded the per share exercise price of each option.

According to Sullivan's calculations, the current option (exercise) price for each of his 9,000 options is $8.50. Easco has not challenged Sullivan's calculations.

To date, Easco has refused to pay Sullivan the sum to which he claims entitlement for cancellation of his unexercised stock options.

### II.

Sullivan has moved for summary judgment as to Count I, arguing that his employment agreement with Easco is valid and enforceable, given that it was duly executed by an officer of Easco and unanimously approved by its Board of Directors. (Paper # 26, at 6). Easco argues that, as Chairman of Easco's Board of Directors and Chief Executive Officer of Easco, Sullivan has the burden of proving the fairness and reasonableness of the aforementioned employment agreement. *See* Md. Corp. & Ass'ns Code Ann. § 2–419 (1976). (Paper # 30, at 2). Easco has not advanced any other facts or legal theories precluding summary judgment, but rests upon its § 2–419 defense, which, then, sets the bounds of this Court's legal and factual inquiry on summary judgment. *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corporation v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Sullivan replies that he bears this burden of proving fairness and reasonableness, only if this Court accepts Easco's "utterly brazen and bizarre interpretation" of § 2–419. (Paper # 32, at 5).

It was the longstanding common law rule in Maryland that any contract between a corporation and one of its officers or directors as to a matter in which the officer or director had a substantial personal interest was void or voidable. *Cumberland Coal and Iron Co. v. Sherman,* 20 Md. 117 (1863); *Hoffman Steam Coal Co. v. Cumberland Coal and Iron Co.,* 16 Md. 456 (1860). *See also United States v. Shamy,* 656 F.2d 951, 957 (4th Cir.1981). The Maryland Court of Appeals, per Judge McWilliams, noted the metamorphosis of the aforementioned common law rule, and dis-

cussed the modern one, in *Chesapeake Constr. Corp. v. Rodman,* 256 Md. 531, 261 A.2d 156 (1970). Judge McWilliams stated therein that:

> While at one time our predecessors seemed to favor setting aside ... transactions [between a corporation and its officer or director] upon the application of an interested party regardless of the question of fairness to the corporation, it is now well settled that a transaction such as the one before us will always be closely scrutinized and, if shown to be unfair or entered into in bad faith by the corporate officer [or director], nullified. And, as observed by Judge Powers, the burden of proving that the contract is fair, adequate and equitable is upon the officer or director.

*Chesapeake Constr. Corp. v. Rodman,* 256 Md. at 536, 261 A.2d at 158. *See also Cumberland Coal and Iron Co. v. Parish,* 20 Md. 117 (1863). This "modern" common law rule applied to compensation agreements like the one here. *See Indurated Concrete Corp. v. Abbott,* 195 Md. 496, 74 A.2d 17 (1950).

In 1976, the General Assembly enacted § 2-419 of the Maryland Corporations and Associations Code Annotated, which provides that:

(a) *General Rule.*—If subsection (b) of this section is complied with, a contract or other transaction between a corporation and any of its directors or between a corporation and any other corporation, firm, or other entity in which any of its directors is a director or has a material financial interest is not void or voidable solely because of any one or more of the following:

(1) The common directorship or interest;

(2) The presence of the director at the meeting of the board or a committee of the board which authorizes, approves, or ratifies the contract or transaction; or

(3) The counting of the vote of the director for the authorization, approval, or ratification of the contract or transaction.

(b) *Disclosure and ratification.*—Subsection (a) of this section applies if:

(1) The fact of the common directorship or interest is disclosed or known to:

(i) The board of directors or the committee, and the board or committee authorizes, approves, or ratifies the contract or transaction by the affirmative vote of a majority of disinterested directors, even if the disinterested directors constitute less than a quorum; or

(ii) The stockholders entitled to vote, and the contract or transaction is authorized, approved, or ratified by a majority of the votes cast by the stockholders entitled to vote other than the votes of shares owned of record or beneficially by the interested director or corporation, firm, or other entity; or

(2) The contract or transaction is fair and reasonable to the corporation.

(c) *Counting common or interested directors in determining quorum.*—Common or interested directors of the stock owned by them or by an interested corporation, firm, or other entity may be counted in determining the presence of a quorom at a meeting of the board of directors or a committee of the board or at a meeting of the stockholders, as the case may be, at which the contract or transaction is authorized, approved, or ratified.

(d) *Burden of proof; fixing of compensation.*—(1) If a contract or transaction is not authorized, approved, or ratified in one of the ways provided for in subsection (b)(1) of this section, the person asserting the validity of the contract or transaction bears the burden of proving that the contract or transaction was fair and reasonable to the corporation at the time it was authorized, approved, or ratified.

(2) This subsection does not apply to the fixing by the board of directors of reasonable compensation for a director, whether as a director or in any other capacity.

(e) *Procedures and provisions in compliance with § 2-418 deemed satisfactory.*—Any procedures authorized by

§ 2–418 of this subtitle shall be deemed to satisfy subsection (b)(1) of this section. Any charter, bylaw, contract, or transaction requiring or permitting indemnification, including advances of expenses, in accordance with § 2–418 of this subtitle is fair and reasonable to the corporation.

The purpose and effect of this statute is clear: The interested director no longer bears the burden of proving the fairness and reasonableness of his contract with the corporation, where the contracting director's interest was disclosed to the board of directors, and a majority of the disinterested directors nonetheless approved the contract. § 2–419(a), (b)(1). The burden of proving the fairness and reasonableness of the contract is on the interested director only where disinterested director approval (or shareholder ratification) is lacking. § 2–419(b)(2), (d)(1). For obvious practical reasons, *i.e.*, the difficulty most people would have in justifying their own salaries, the interested director never bears the burden of proving the fairness and reasonableness of a compensation agreement. § 2–419(d)(2).

Commentary on statutes akin to § 2–419 agrees with the above interpretation. "[The statutory provisions on director conflicts of interest] require some disinterested director vote, shareholder ratification, or that the transaction be fair and reasonable." H. Henn and J. Alexander, *Laws of Corporations* § 238 (1983) at 640. Discussing the archetypal California disinterested director statute, Professors Henn and Alexander stated that, where a disinterested director vote or shareholder ratification is lacking, "the person asserting the validity of the transaction must sustain the burden of proving that the transaction was just and reasonable as to the corporation." *Id.*, at 640–41 n. 10. This is what § 2–419(d)(1) is designed to accomplish, but where there is director ratification under § 2–419(b)(1), no question of burden of proof is raised under (d)(1).

■ The parties are agreed that the contract between Easco and Sullivan was unanimously approved by Easco's disinterested directors. Even if such director ap- proval were lacking here, Sullivan would not bear the burden of proving the fairness and reasonableness of what is essentially a compensation agreement. § 2–419(d)(2). This Court thus determines that: (1) under § 2–419, Sullivan does not bear the burden of proving the fairness and reasonableness of his contract with Easco; (2) Easco's argument that summary judgment as to Count I should be denied because Sullivan has failed to sustain his burden of proof is therefore totally without merit; and (3) that the contract is not void or voidable on conflict-of-interest grounds. § 2–419(a).

Easco argues that, at any rate, Sullivan bears the burden of proving the fairness and reasonableness of the employment agreement because this agreement was adopted in response to a takeover threat. (Paper # 30, at 30). It relies on Delaware law in support of this proposition. This Court agrees with Sullivan's statement in reply: "[B]ecause § 2–419, as applied to the facts of this case, specifically provides that the burden of proof is not on Sullivan to prove the fairness and reasonableness of his employment contract, there is no basis for this Court, in effect, to adopt an amendment to the statutory language of § 2–419, and to reach a different result where an employment contract or other agreement is allegedly adopted in response to an unfriendly takeover threat." (Paper # 32, at 19).

This Court additionally rejects the argument that the provision in the employment agreement negating Sullivan's duty to mitigate damages creates an unreasonable contract penalty against Easco.

For the aforementioned reasons, summary judgment with respect to Count I will be, by separate order, *granted.* The remaining legal and factual issues as to damages will be resolved at trial.

### III.

■ Sullivan has also moved for summary judgment as to Count V, arguing that, regardless of the validity of the employment agreement, Easco is obligated to afford him the stock option pursuant to Plan 5, Grant 9. (Paper # 26, at 7). Easco

argues that Sullivan's right to exercise his option expired upon the termination of his employment. (Paper # 30, at 3). Obviously abandoning his initial position, Sullivan replied that (1) the employment agreement is valid and enforceable, and (2) it provides that, nothwithstanding termination, he shall be treated as a corporate executive with regard to the corporation's stock option programs. (Paper # 32, at 27).

It indeed appears to be the case, given the aforementioned language in the employment agreement, that Sullivan is entitled to exercise his stock option pursuant to Plan 5, Grant 9. However, this Court feels that it would be inappropriate to grant summary judgment at this juncture since Easco has not had an opportunity to respond to Sullivan's new and, frankly, inconsistent argument.

For the aforementioned reason, Sullivan's motion for summary judgment as to Count V is, by separate order, *denied*, without prejudice.

## ORDER

For the reasons stated in the foregoing Memorandum, IT IS this 23rd of March, 1987, by this Court, ORDERED:

1. That plaintiff's motion for summary judgment BE, and the same hereby IS, GRANTED in part and DENIED in part;

2. That plaintiff's motion for summary judgment as to Count I BE, and the same hereby IS, GRANTED;

3. That plaintiff's motion for summary judgment as to Count V BE, and the same hereby IS, DENIED;

4. That the Clerk of the Court mail copies of the foregoing Memorandum and of this Order to counsel for the parties.